UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ROOSEVELT BARTU,[1]

           Petitioner,

v.

PAMELA BONDI, Attorney General;
KRISTI NOEM, Secretary of Homeland
Security; TODD M. LYONS, Acting
Director, U.S. Immigration and Customs
Enforcement; MARCOS CHARLES,
Acting Executive Associate Director for
Enforcement and Removal Operations;
PETER BERG, Field Office Director for
Enforcement and Removal Operations;
U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; U.S. DEPARTMENT
OF HOMELAND SECURITY; and JOEL
BROTT, Sherburne County Sheriff,

           Respondents.

Case No. 25-CV-3198 (PJS/DTS)

ORDER

---

    Nicholas Ratkowski, RATKOWSKI LAW PLLC, for petitioner.

    Ana H. Voss and Liles Harvey Repp, UNITED STATES ATTORNEY'S OFFICE, for all respondents except Joel Brott.

    George Randolph Kennedy, SHERBURNE COUNTY ATTORNEY'S OFFICE, for respondent Joel Brott.

---

[1] Because the Eighth Circuit has used Bartu's full name in an opinion, this Court does likewise. *See Bartu v. Bondi*, No. 25-2048, 2025 WL 2364589 (8th Cir. Aug. 14, 2025); *see also* Fed. R. Civ. P. 5.2(c).

Petitioner Roosevelt Bartu is a Liberian citizen admitted to the United States as a lawful permanent resident in 2015. In June 2023, the Department of Homeland Security ("DHS") issued a notice to appear, charging Bartu with removability based on Bartu's criminal convictions. Bartu has been in immigration custody since December 2023. Bartu brings this habeas action pursuant to 28 U.S.C. § 2241, contending that his continued detention without a bond hearing is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001).

This matter is before the Court on the parties' objections to the September 19, 2025 Report and Recommendation ("R&R") of Magistrate Judge David T. Schultz. Judge Schultz recommends denying Bartu's motion for a temporary restraining order as moot and denying Bartu's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 15. Both parties have objected to the R&R. ECF Nos. 17, 18. Bartu objects to the R&R's conclusion that his ongoing detention is lawful under *Zadvydas*,[2] and the government objects to the R&R's conclusion that the lawfulness of Bartu's detention should be analyzed under *Zadvydas*.

The Court has conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Based on that review, the Court concludes that Bartu is not subject to an administratively final removal order and thus that *Zadvydas* does not limit the length of

---

[2]Bartu also objects to the R&R's conclusion that his conditions-of-confinement claim is not cognizable in habeas, discussed *infra*.

his detention.  Accordingly, Bartu's ongoing detention is lawful under 8 U.S.C. § 1226(c) and will remain lawful as long as his appeal is pending.  *Banyee v. Garland*, 115 F.4th 928, 930 (8th Cir. 2024) ("Due process imposes no time limit on detention pending deportation.").  The Court therefore sustains the government's objection, overrules Bartu's objection, and dismisses his petition.

 After DHS issued a notice to appear to Bartu, an immigration judge ("IJ") ordered Bartu removed to Liberia in April 2024 and denied Bartu asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  ECF No. 11-6.  In October 2024, the Board of Immigration Appeals ("BIA") affirmed the IJ's removability determination but remanded the case to the IJ for further consideration of Bartu's withholding-of-removal claim.  ECF No. 11-7.  The IJ again found Bartu ineligible for relief.  ECF No. 11-9.  Bartu appealed once more but inadvertently filed the wrong supporting brief on the last day before his deadline.  ECF Nos. 11-1, 11-10.  When he submitted the correct brief after the deadline, the BIA refused to consider it and dismissed Bartu's appeal.  ECF No. 11-10.  The Eighth Circuit granted Bartu a stay of removal and remanded Bartu's case to the BIA, concluding that the BIA abused its discretion in failing to consider the late-filed brief.  ECF Nos. 11-12, 11-1; *Bartu*, 2025 WL 2364589, at *3.  Bartu's appeal remains pending before the BIA.

The parties dispute whether Bartu is subject to an administratively final removal order. If he is, *Zadvydas* establishes a rebuttable presumption that detention of more than six months is unlawful. 533 U.S. at 699; *see also* 8 U.S.C. § 1231(a) (governing post-removal-order detention). If he is not, then Bartu—as a deportable alien who has committed an aggravated felony—may be detained under 8 U.S.C. § 1226(c) until his removal proceedings are concluded, no matter how long that takes. *See Banyee*, 115 F.4th at 930.

There is no dispute that Bartu has been ordered removed. The October 2024 order of the BIA affirming Bartu's removability was an "order of removal" because it "concluded that [Bartu] is 'deportable' and command[ed] his deportation," *Riley v. Bondi*, 606 U.S. 259, 267 (2025); *see also* ECF No. 11-9. But to start the running of the *Zadvydas* clock, a removal order must be administratively final. *See* 8 U.S.C. § 1231(a)(1)(B)(i); *Johnson v. Guzman Chavez*, 594 U.S. 523, 534–35 (2021) (noting that a noncitizen must both be "ordered removed," and his removal order must be "administratively final" for 8 U.S.C. § 1231(a)(1) to apply). A removal order does not become "administratively final" until "the conclusion of [removal] proceedings," which typically occurs when the BIA "dismiss[es] an appeal." 8 C.F.R. § 1241.1(a). Bartu is still in removal proceedings, so his removal order is not yet administratively final.

Bartu resists this conclusion. He argues that, because he has not challenged his removability since entry of the October 2024 order, "that *portion* of the decision [is] administratively final." ECF No. 1 ¶ 7 (emphasis added). Therefore, Bartu contends, the October 2024 order started the running of the *Zadvydas* clock despite the fact that he has an appeal pending before the BIA and the Eighth Circuit has stayed his removal.

The Court disagrees.[3] There is simply no support for the notion that a portion of a BIA decision may become administratively final while another portion is still pending on appeal. As mentioned, a removal order must be administratively final in order to trigger running of the *Zadvydas* deadline. The applicable regulations clarify that a removal order is not administratively final until the "conclusion of [removal] proceedings." 8 C.F.R. § 1241.1(a). Here, the October 2024 BIA order did not *dismiss* the appeal; rather, it remanded to the IJ for further proceedings. Thus, the Court disagrees with Bartu that the removal order is administratively final solely because his removability is no longer at issue.

---

[3]True, the October 2024 removal order became "administratively final" when the BIA dismissed Bartu's second appeal in May 2025. But that changed—i.e., the October 2024 order became administratively "un-final"—in July 2025, when the Eighth Circuit issued its stay and remanded the case back to the BIA. Bartu's two-month detention during this period is presumed reasonable under *Zadvydas*, and the *Zadvydas* clock will not begin to run again until the BIA "dismiss[es]" Bartu's appeal. 8 C.F.R. § 1241.1; *see Bah v. Cangemi*, 489 F. Supp. 2d 905, 916–17 (D. Minn. 2007) (describing the interaction between *Zadvydas* and stays of removal).

In the R&R, Judge Schultz finds that the October 2024 removal order is administratively final for a different reason. The R&R points out that, after the BIA "affirmed [Bartu's] removability" under 8 U.S.C. §§ 1227(a)(2) and 1101(a)(47)(A), all subsequent proceedings have focused on the issue of withholding or deferral of removal. ECF No. 15 at 6. Thus, reasons the R&R, Bartu's pending appeal at the BIA is a "withholding-only proceeding"—a type of proceeding that, under Supreme Court precedent, does not affect the finality of an order of removal. *See id.*; *Perez v. Berg*, No. 24-CV-3251 (PAM/SGE), 2025 WL 566884, at *2 (D. Minn. Jan. 6, 2025), *report and recommendation adopted*, 2025 WL 566321 (D. Minn. Feb. 20, 2025); *cf. Johnson*, 594 U.S. at 534–36. As the R&R would have it, then, the October 2024 order is administratively final *as to the issue of removability*, and therefore *Zadvydas* applies. ECF No. 15 at 6–8.

This is a difficult issue—and the R&R may be correct—but this Court concludes that Bartu is not subject to an administratively final removal order so long as his removal proceedings are pending. Typically, removal proceedings "determine not only *whether* an individual may be removed from the United States but also to *where* he may be removed." *D.V.D. v. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 365 (D. Mass. 2025), *modified*, *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025) (mem.) (staying preliminary injunction). In *Johnson v. Guzman Chavez*, the Supreme Court explained that "an alien subject to the standard removal process typically applies for withholding

-6-

during the course of his removal proceedings," as Bartu did here.  594 U.S. at 531.  Moreover, Bartu agrees that he is still in "regular removal proceedings."  ECF No. 17 at 6.  Ordinary removal proceedings like Bartu's conclude only after *all* demands for relief are resolved, even if an IJ's decision about removability is not challenged on appeal.  *See, e.g.*, *Abdirizak Mohamed A. v. Brott*, No. 18-CV-3063 (ECT/HB), 2020 WL 1062913, at *1–2 (D. Minn. Mar. 5, 2020) (applying 8 U.S.C. § 1226(c) instead of 8 U.S.C. § 1231(a)(1) after a removability determination where a CAT-relief issue persisted on appeal).

    A withholding-only proceeding differs in material respects from an ordinary removal proceeding.  In a withholding-only proceeding, "the only issue" *from the outset of the proceedings* "is whether the alien may be removed to his home country."  *Riley*, 606 U.S. at 265.  Withholding-only proceedings occur in two circumstances:  (1) when an individual who is subject to a *reinstated* order of removal challenges withholding or deferral of removal (and makes no challenge to removability); and (2) when an individual who is subject to the expedited removal process provided by 8 U.S.C. § 1228 challenges withholding or deferral of removal following a DHS-issued Final

Administrative Review Order ("FARO").  *Johnson*, 594 U.S. at 531; *Riley*, 606 U.S. at 264.

In both of these situations, the noncitizen *from the outset* concedes removability and

challenges only withholding or deferral.[4]

Bartu has never been subject to a reinstated final removal order or FARO.

Instead, Bartu was the subject of ordinary removal proceedings, and those proceedings

are now pending on appeal before the BIA.  The fact that, during the proceedings, Bartu

made arguments about withholding does not somehow convert ordinary removal

proceedings into withholding-only proceedings.  The Court therefore respectfully

disagrees with the R&R's conclusion to the contrary.

---

[4]A FARO is a distinct type of administratively final removal order issued under 8 U.S.C. § 1228.  Under this statute, immigration officers may detain noncitizens convicted of aggravated felonies and put them in "expedited" removal proceedings.  *Id.* § 1228(a)(3).  Only noncitizens who are not lawful permanent residents are subject to § 1228.  *Id.* § 1228(b)(2)(a).  Bartu is a lawful permanent resident, so § 1228 does not apply to his case, even though he was convicted of an aggravated felony.

Still, it is useful to explain why a FARO is distinct from the order of removal at issue in Bartu's case.  Under § 1228, if an immigration officer finds an alien removable—or if the alien declines to challenge removability—the officer issues a FARO that identifies the country to which the alien will be deported.  8 C.F.R. §§ 238.1(d)(1), (f)(2); *see also Riley*, 606 U.S. at 264 (describing the FARO process). "Because an alien in streamlined removal proceedings cannot seek review of his FARO before an IJ *or* the BIA, the period to seek review expires as soon as the FARO is issued." *Riley*, 606 U.S. at 267 (cleaned up).  For that reason, the Supreme Court held that FAROs are administratively final removal orders and that appeals stemming from FAROs are withholding-only proceedings.  *Id.* at 272.  Hence, like withholding-only proceedings stemming from reinstated removal orders, FARO appeals are, from their inception, limited to the issue of withholding or deferral.

In sum, because Bartu remains involved in ordinary removal proceedings, and because the BIA has not dismissed his appeal, Bartu is not subject to an administratively final removal order. Thus, his ongoing detention is lawful under 8 U.S.C. § 1226(c) and is not limited by *Zavydas*. *Banyee*, 115 F.4th at 930 (8th Cir. 2024).

Lastly, Bartu demands release or transfer due to punitive conditions of confinement. Bartu was transferred from Sherburne County Jail in Minnesota to the Louisiana ICE Processing Center in Angola, Louisiana. ECF Nos. 1 ¶ 16, 17 at 2, 21. He challenges conditions in both the Minnesota and Louisiana facilities. Typically, conditions of confinement may not be challenged in a habeas petition. *Spencer v. Haynes*, 774 F.3d 467, 468–70 (8th Cir. 2014). Rather, a habeas petition can only challenge the fact or duration of confinement. *Id.* Conditions-of-confinement claims, by contrast, must be brought as part of a civil-rights action (such as an action under 42 U.S.C. § 1983) filed in the district of confinement. *Id.*

That said, the civil detention of an alien subject to a removal order cannot be punitive in purpose or effect. *Zadvydas*, 533 U.S. at 690. Thus, Bartu argues, immigration detainees may challenge "punitive" conditions of confinement in habeas proceedings. ECF No. 17 at 9–11 (citing *Aamer v. Obama*, 742 F.3d 1023, 1032 (D.C. Cir. 2014) ("[O]ne in custody may challenge the conditions of his confinement in a petition for habeas corpus."); *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (holding that

challenges to discretionary bond determinations are cognizable in habeas); *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 705–06 (D. Minn. 2025) (exercising jurisdiction over petition seeking release from custody); *Mohammed H. v. Trump*, 781 F. Supp. 3d. 886, 891–92 (D. Minn. 2025) (same)).

Bartu's argument holds some appeal. In the context of the COVID-19 pandemic, this Court acknowledged that a § 2241 petition may be an appropriate vehicle for relief from extreme conditions of confinement when a petitioner seeks release, and not just a transfer or other change in circumstances. *Frohlich v. United States*, No. 20-CV-2692 (PJS/HB), 2021 WL 2531188 (D. Minn. June 21, 2021). The Court noted that "whether a § 2241 petition can be used to challenge a petitioner's confinement in light of the conditions of his confinement must depend on the substance, and not merely the form, of the claim asserted by the petitioner." *Id.* at *2; *see also Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323–25 (3d Cir. 2020) (concluding that immigration detainees may bring a habeas petition seeking "only release on the basis that unconstitutional confinement conditions require it" due to the "extraordinary circumstances" posed by COVID-19); *Ochoa v. Kolitwenzew*, 464 F. Supp. 3d 972, 981 (C.D. Ill. 2020) (collecting cases that allowed conditions-of-confinement claims to proceed in a habeas petition during COVID-19). The question is whether "it is impossible for the United States government to constitutionally confine [petitioner] *anywhere*." *Frohlich*, 2021 WL

2531188, at *2. The Court held that Frohlich's conditions could be remedied by transferring him to a better facility and therefore he was not entitled to habeas relief. *Id.*

In another case, this Court clarified that "[a] legal action seeking transfer from one form of BOP custody to another . . . is not a challenge to the fact or duration of confinement" and is therefore not cognizable under § 2241. *Johnson v. Birkholz*, No. 21-CV-2017 (PJS/LIB), 2022 WL 3135304, at *1 (D. Minn. Aug. 5, 2022) (citations omitted).[5] Accordingly, courts must "examine a § 2241 petition carefully to make certain that the petitioner is in fact claiming that the United States government cannot lawfully confine him at *any* facility, and thus that he must be released from confinement altogether." *Frohlich*, 2021 WL 2531188, at *2.

Here, Bartu seeks immediate release *or* a transfer to a different facility, and Bartu does not argue (except as part of his now-rejected *Zavydas* claim) that he cannot be lawfully detained in any facility. ECF No. 1 ¶ 35. Rather, Bartu complains only about the conditions at two particular facilities. As a result, Bartu is not entitled to habeas

---

[5]*Frohlich* and *Johnson*, like *Spencer v. Haynes*, involved petitioners who were in criminal custody. Other courts, however, have applied the same analysis to habeas petitions filed by civil immigration detainees. *E.g.*, *Roman v. Garcia*, No. 6:24-CV-01006, 2025 WL 1441101, at *5 (W.D. La. Jan. 25, 2025) ("Habeas exists solely to 'grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose.'" (quoting *Pierre v. United States*, 525 F.2d 933, 936 (5th Cir. 1976)); *cf. Doe v. Bostock*, No. C24-0326, 2024 WL 3291033, at *6 (W.D. Wash. March 29, 2024) (assuming without deciding that a detainee who "asserts her entitlement to relief in the form of her immediate release" may bring a habeas petition but requests for "improvement in [] conditions" should be brought as a civil-rights claim).

relief, and the Court must dismiss his conditions-of-confinement claim for lack of jurisdiction.

ORDER

Based on all of the files, records, and proceedings herein, the Court ADOPTS IN PART AND REJECTS IN PART the Report and Recommendation [ECF No. 15]. Accordingly, IT IS HEREBY ORDERED THAT:

1. Petitioner's motion for a temporary restraining order [ECF No. 2] is DENIED.

2. Petitioner's 28 U.S.C. § 2241 petition for a writ of habeas corpus [ECF No. 1] is DISMISSED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 16, 2025              /s/ Patrick J. Schiltz
                                       Patrick J. Schiltz, Chief Judge
                                       United States District Court